Erika Peterman
RCO Legal, P.S.
P.O. Box 294
Missoula, MT 59806
(406) 493-0360
epeterman@rcolegal.com

Skiff R. Larson
*Admitted Pro Hac Vice*
P.O. Box 7478
Williston, ND 58803
(701) 354-2571
skifflarson@gmail.com

*Attorneys for Defendant/Counterclaimant Pilot Energy Group, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

EOG RESOURCES, INC.,

        Plaintiff,

  vs.

BERWICK RESOURCES, L.P.; and
PILOT ENERGY GROUP, LLC,

        Defendants.

Case No. CV 13-143-BLG-SEH

**PILOT ENERGY GROUP, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant/Counterclaimant Pilot Energy Group, LLC ("Pilot") submits this

Reply in Support of its Motion for Summary Judgment (Docket No. 66).

## I. INTRODUCTION

Pilot's motion for summary judgment should be granted because (1) Pilot's

interpretation of the 2009 Leases is the only interpretation advanced in this case

consistent with Montana law applied to oil and gas leases; (2) EOG failed to exercise the Renewal Option in the 2009 Leases by failing to deliver the payments to Berwick Resources, LP ("Berwick") prior to the expiration of the primary terms of the subject 2009 Leases, resulting in automatic termination thereof; and (3) regardless of the interpretation of the Renewal Option and the 2009 Leases, EOG's delay of almost 9 months prior to asserting a claim, only after being assured of financial success, requires the application of laches to bar EOG's claims asserted in this case.  The interpretation of the 2009 Leases and the Renewal Option advanced by EOG in its Response in Opposition to Pilot Energy Group, LLC's Motion for Summary Judgment (Docket No. 76) ("EOG's Response") is unsupported by the express language therein and is contrary to Montana law applied to oil and gas leases. Furthermore, EOG's Response fails to explain its nearly 9-month delay before asserting a continuing claim under the 2009 Leases and does not preclude the application of laches.

There is no genuine dispute of material fact precluding the entry of summary judgment in favor of Pilot and Berwick in this case. Pilot and Berwick are entitled to a judgment as a matter of law declaring Pilot's 2013 Leases as valid, in effect and superior to any interest claimed by EOG in the mineral estate of the subject lands owned by Berwick.

## II. ARGUMENT

**A.     Construction and Interpretation of the 2009 Leases**

1.     <u>Montana law modifies the rules of contract interpretation in several respects when applied to oil and gas leases in order protect the interest of the lessor</u>.

The rules of construction and interpretation of oil and gas leases advanced by EOG in its Response are a misstatement of the law.  While generally the rules of contract interpretation are applicable to oil and gas leases in Montana, the Montana Supreme Court has consistently held that several specific rules have been modified to protect the interest of the lessor, which has been determined to be of paramount importance.  *Moerman v. Prairie Rose Resources, Inc.*, 308 P.3d 75, 79 (Mont. 2013).  Specifically, oil and gas leases are to be construed liberally in favor of the lessor and against the lessee.  *Clawson v. Berklund*, 610 P.2d 1168, 1171 (Mont. 1980).  Time is of the essence, even when the contract does not so provide.  *Id.*; *see also Sandtana, Inc. v. Wallin Ranch Co.*, 80 P.3d 1224, 1234 (Mont. 2003).  Forfeiture is favored in oil and gas leases.  *Id.*  EOG's contention to the contrary ignores numerous Montana Supreme Court decisions and are inaccurate statements of controlling law.

2.     <u>Pilot's interpretation of the 2009 Leases is the only interpretation consistent with Montana law applied to oil and gas leases and options</u>.

EOG's interpretation of the 2009 Leases ignores the express language of those leases and is contrary to Montana law. Not surprisingly, EOG is unable to cite a

single Montana authority that supports its interpretation of the 2009 Leases.   Pilot's interpretation of the 2009 Leases -- that exercise of the Renewal Option is only effective when the option payment is received by Berwick prior to the expiration of the primary terms of the 2009 Leases -- is the only interpretation consistent with Montana law as applied to oil and gas leases and options.   Pilot's interpretation is supported by numerous Montana authorities, which is the controlling law in this case.

First, the express language of ¶4 of the 2009 Leases indicates that it is only applicable to required payments, not discretionary, optional payments.   Specifically, ¶4 applies only to "payments <u>required</u> to be made to lessors pursuant to this lease . . .".   *See* Pilot Energy Group, LLC's Statement of Undisputed Facts ("Pilot SOF") at ¶¶ 3-4.   By its own terms, the "Lessee <u>may</u> exercise this option by paying"; the Renewal Option exercise payment is discretionary and not required.

EOG's interpretation would require applying the word "any" to modify "payments required" to mean "any payments."   This is not supported by basic grammar rules nor a plain reading of ¶4.   EOG's interpretation would alternatively allow EOG's unilateral decision to make an optional payment, changing the nature of a discretionary payment to a required payment.   Such an interpretation would ignore the express language and would effectively render the language utilized meaningless, contrary to Montana rules of contract interpretation.   *See e.g. Downs*

*v. Smyk*, 604 P.2d 307, 310 (Mont. 1980); *see also* MCA § 28-3-202.  Such an interpretation is contrary to the strict construction of the 2009 Leases against EOG, as the party that is not bound by the Renewal Option.  *See e.g. McDaniel v. Hager-Stevenson Oil Co.*, 243 P. 582, 582 (Mont. 1926).

Second, the interpretation advanced by EOG directly contradicts Montana's adoption of the majority common law rule that exercise or acceptance of an option is not operative until received by the optionor.  *See* Restatement (Second) of Contracts Sec. 63(b); *Smith v. Farmers Union Mut. Ins. Co.*, 260 P.3d 163, 169-170 (Mont. 2011) (citing Sec. 63(b) of the Restatement (Second) of Contracts with approval and questioning any application of the mailbox rule in Montana).  The Renewal Option authorized EOG to exercise by "paying to lessor . . . prior to the expiration of said lease."  Because exercise of an option is not operative until received, and the Renewal Option required payment prior to expiration of the primary term, receipt of payment by Berwick on or before January 30, 2013, was required for a valid exercise of the Renewal Option.  Nothing in the Renewal Option or 2009 Leases indicates the parties agreed to modify this rule; the exercise of an option is not effective until received by the optionor.

Finally, EOG's argument in support of the application of ¶4 to the Renewal Option is contrary to established Montana law, providing that a lease and an option are distinct agreements, even when both are included in the same instrument.  *Miller*

*v. Meredith*, 423 P.2d 595, 597 (Mont. 1967) ("The terms and conditions of the lease are not the terms and conditions of the option."). EOG provides no explanation as to why this rule is limited to purchase options. Under EOG's asserted interpretation, the Renewal Option would be considered a payment required under the terms of the 2009 Leases. If the Renewal Option was in fact a term of the 2009 Leases (and the lease and option were not distinct agreements), then a valid exercise of the Renewal Option would extend the primary term of the leases for an additional 2 years ("under the same terms and provisions") and include the same Renewal Option right to renew the primary term for an additional 2 years. The result would be absurd; EOG would have the right to renew the 2009 Leases indefinitely in 2-year increments. The principles applied in *Miller* to avoid a similarly absurd result are likewise necessary to avoid such a result in this case. Furthermore, Montana's rules of interpretation of contracts do not support such an unreasonable interpretation, which is clearly contrary to the intent of the parties. *See* MCA § 28-3-201.

Accordingly, and as more fully explained in Pilot's initial Brief, Pilot's interpretation is the only interpretation of the 2009 Leases consistent with Montana law. Because EOG failed to deliver the Renewal Option payments prior to the expiration of the primary terms of the 2009 Leases, the 2009 Leases expired and terminated automatically under their own terms. Therefore, Pilot's 2013 Leases are the only oil and gas leases that are valid, in effect and superior to the expired 2009

Leases as to Berwick's minerals in and under the subject lands.  There are no genuine issues of material fact as to the interpretation of the 2009 Leases and EOG's failure to exercise the Renewal Options in accordance with their terms.  Pilot and Berwick are entitled to a judgment as a matter of law in their favor.

      3.     <u>The 2009 Leases are analogous to "unless" type leases</u>.

The 2009 Leases are analogous to "unless" type leases in that they terminate automatically at the end of the primary term without any action by lessor, *unless* the lessee commences drilling operations or exercises the option to renew before the expiration of the primary term.  The Montana Supreme Court has expressly recognized that an "unless" type oil and gas lease simply creates an annual option contract by requiring the payment of delay rentals.  *See Soldberg v. Sunburst Oil & Gas Co.*, 246 P. 168, 172 (Mont. 1926).  It is unclear why EOG attempts to distinguish the 2009 Leases from "unless" type leases because EOG does not contend the 2009 Leases were extended under any provision other than its alleged exercise of the Renewal Options.  Here, where none of the other provisions are applicable to extending the 2009 Leases, the Pugh Clause clearly provides for automatic termination at the expiration of the primary term unless the lands subject to are within spacing units where drilling or production has commenced.  The analogy to "unless" type leases is valid and sanctioned by the Montana Supreme Court.  Because EOG failed to exercise the Renewal Options prior to expiration of

the primary terms of the 2009 Leases, the leases automatically terminated without any action being taken by Berwick.

4.      The 2009 Leases expired under their own terms; there was no forfeiture.

The 2009 Leases expired under their own terms; there was no forfeiture to which equity can be applied for relief.  The failure to satisfy a condition precedent does not result in a forfeiture:

> The equitable rule as to relieving against forfeitures has no application to the case of a failure of a holder of an option to do, within the time fixed, what is required to acquire the thing which is the subject of the option.  Equity does not undertake to dispense with compliance with what is made a condition precedent to the acquisition of a right.

*Gillespie v. Bobo*, 71 F. 641 (5th Cir. 1921); *see also Appling v. Morrison*, 227 S.W. 708 (Tex. Civ. App. El Paso 1921); *Empire Gas & Fuel Co. v. Saunders*, 22 F.2d 733 (5th Cir. 1957) *cert. granted*, 277 U.S. 580 (1928) *cert. dismissed*, 278 U.S. 581 (1929); *Keeler v. Dunbar*, 37 F.2d 868 (5th Cir. 1930).  The authority cited by EOG supporting its argument that failure of a condition precedent is not fatal is not controlling authority and is contrary to Montana law applied to oil and gas leases.

5.      Forfeiture is favored in oil and gas leases; equity should not be applied in this case.

Even if the expiration and automatic termination of the 2009 Leases in accordance with the terms could be considered a forfeiture, such a result is favored under Montana law.  *Clawson*, 610 P.2d at 1171; *Sandtana*, 80 P.3d at 1234.  The case law cited by EOG supporting the application of equity is based in jurisdictions,

which unlike Montana, do not favor forfeiture in oil and gas leases.  Equity should not be applied here because such result directly contradicts Montana law, the controlling authority in this case.

**B.     The Doctrine of Laches Bars EOG's Claims.**

   1.     <u>EOG failed to assert a continuing interest under the 2009 Leases for almost 9 months</u>.

EOG's argument that it continually asserted an interest under the 2009 Leases lacks any factual basis.  When EOG discovered the Renewal Option payments were not delivered prior to the expiration of the primary terms of the 2009 Leases from Canova Berwick's voicemail, its representative, Stephanie Daughtery, told Canova Berwick that she needed to speak with her superiors and would follow up with Berwick about EOG's position.  Pilot SOF at ¶¶ 7-8.  The next time EOG asserted a claim under the 2009 Leases was after it received several offers for the purchase of the 2009 Leases after Continental Resources, Inc. obtained a permit to drill the Gehringer 1-13H ("Well") and notices were sent out to interest owners.  *Id.* at ¶¶ 16-20.  On October 29, 2013, when EOG finally asserted its claim, Condor and Pilot were already obligated for the proportionate share of well costs under the 2013 Leases, either by direct payment or by assessment of a 200% risk penalty on their interests.  *Id.*  Despite EOG's attempts to distinguish the laches case law cited by Pilot in its Brief, the facts in this case are consistent with and require the application of laches to bar EOG's claims.  *See* Pilot's Brief at pp. 22-27 (citing numerous

analogous cases where laches was applied where a claim was withheld until after assurances of financial success).

      2.    <u>EOG did not have record title to the leasehold estate under the expired 2009 Leases</u>.

EOG did not have record title to the leasehold estate on the Berwick's lands subject to the 2009 and 2013 Leases.  The recorded and expired 2009 Leases did not constitute record title to, or notice of a continuing interest in, the leasehold estates after expiration of the primary term.  While a lessee has a statutory duty to record a release of an expired or terminated oil and gas lease, nothing in MCA §§ 82-1-201, et seq. provides that such a failure affirmatively establishes record title under an expired lease or constitutes constructive notice of a continuing claim.  *See Miami Oil Produces, Inc. v. Larson*, 661 P.2d 1260, 1264-1265 (Mont. 1983). As such, EOG's claim that it had record title is without merit.

      3.    <u>Speculation is not actual knowledge, and does not preclude application of laches in this case</u>.

From January 31, 2013, until October 29, 2013, Condor and Pilot's knowledge of EOG's claim was limited to: (1) the expired 2009 Leases recorded in Roosevelt County, Montana; (2) the information provided by Berwick about the conversation between Canova Berwick and Stephanie Daugherty on January 31, 2013 (which ended by Ms. Daugherty indicating that she needed to speak with her supervisors about EOG's position and would get back to her); (3) EOG's failure to follow up

with Berwick about its position; and (4) EOG's lack of response to Condor's July 2, 2013 letter notifying EOG of the 2013 Leases.

All of the facts outlined in EOG's Response (pp. 21-22) prior to EOG's October 28, 2013 letter to Condor are not evidence of actual knowledge nor do they create a genuine dispute of material fact. The facts outlined by EOG are merely evidence of Condor and Pilot's speculation about EOG's failure to assert a continuing claim under the 2009 Leases. Speculation about potential claims based upon prior interactions with EOG and other oil and gas companies is <u>not</u> actual knowledge and does not preclude the application of laches to EOG's claims. EOG grossly overstates the actions taken to assert a claim and equally overstates the extent of Condor and Pilot's knowledge. EOG cannot identify any information, other than (1)-(4) outlined above, that Condor or Pilot had actual knowledge prior to EOG's October 28, 2013 correspondence. This is because EOG withheld its claim for almost 9 months until after it was assured financial success.

4.  <u>EOG's delay, and the resulting prejudice to Pilot, requires the application of laches in this case</u>.

EOG only asserted its continuing claim under the 2009 Lease after it received offers from several oil and gas companies for its interest in the Well's spacing unit, assuring it financial success in the enterprise. *See* Pilot SOF at ¶¶ 16-20. EOG's Response fails to explain its delay and the timing of its assertion of the claim. EOG marketed a package of leasehold interests in the same area as the 2009 Leases for

several months and did not receive a single offer through the summer of 2013. *See id.* at ¶17. It was only after Continental Resources, Inc. ("CRI") permitted the Well, after CRI sent out notices of election to participate ("AFE") and after EOG received offers for its other interest in the Well's spacing unit did EOG assert a continuing interest in the previously inactivated and expired 2009 Leases, at which point EOG was assured a profit on the 2009 Leases. *Id.* at ¶¶ 18-20.

EOG's change of position is clearly illustrated by its response to CRI after receipt of the AFE for the Well. EOG disputed the net acreage in the AFE CRI sent, but it never asserted an interest under the 2009 Leases until <u>after</u> it received offers on its other interests in the Well's spacing unit. *See* Pilot SOF at ¶¶ 16-20. Northern Oil & Gas, Inc.'s ("NOG") offer of $2,250.00/net acre assured EOG financial success. After such assurances, EOG changed its position as to the 2009 Leases. *Id.* Speculation about the value of the 2009 Leases before NOG's offer did not assure EOG financial success. Laches in oil and gas is based on the withholding of a claim until assurance of financial success, while others shoulder the risk. Whether EOG thought the 2009 Leases were valuable is irrelevant because, without an offer or completion of a successful well, EOG's thoughts on value were merely speculative.

While EOG attempts to distinguish the time periods for the application of laches in the cases cited in Pilot's initial Brief, it ignores the fundamental principle of laches applied in matters involving oil and gas interests:

PILOT ENERGY GROUP, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 12

> Under such circumstances a person may not withhold his claim awaiting the outcome of a doubtful enterprise, and, after assurance of financial success to the claimant, for the first time assert his interest, especially where he has thus avoided the risks of the enterprise.

*Hunt v. Pick*, 240 F.2d 782, 787 (10th Cir. 1957).  EOG cannot explain why it waited until after it received the offer from NOG, assuring it financial success, to assert a claim.  *See* Pilot SOF at ¶¶ 18-20.  In fact, it is not clear whether EOG would have ever asserted a continuing interest under the 2009 Leases if not for Condor's October 18, 2013 correspondence and follow-up email.  *See id.* at ¶ 16.  EOG cannot explain why, when it disputed the net acreage in the AFE from CRI, it did not assert an interest under the 2009 Leases.  When EOG asserted a claim to CRI to the interests eventually sold to NOG, CRI provided an updated AFE reflecting those interests EOG claimed.  But with the 2009 Leases, despite having actual knowledge CRI was delivering the AFEs for the Well to interest owners, EOG remained silent until after the offer from NOG, and assurance of financial success.  Even then, EOG failed to truly assert its claim when it chose to let Pilot bear the entire risk of the enterprise.  *See id.* at ¶¶ 16-20.  Even now, EOG is still effectively withholding its claim by awaiting the outcome of a doubtful enterprise, as Pilot participated in the risk of the Well, and avoided the imposition of a 200% risk penalty by its share of well costs attributable to the interests under the same lands claimed by EOG under the 2009 Leases in this action.  *See id.* at ¶20.

## III. CONCLUSION

Pilot respectfully requests this Court grant its motion for summary judgment and enter judgment as a matter of law that Pilot's 2013 Leases are valid, in effect and superior to any interest claimed by EOG in the subject lands owned by Berwick.

Dated this 11th day of May, 2015.

By   /s/  Erika Peterman
Erika Peterman
RCO Legal, P.S.
P.O. Box 294
Missoula, MT 59806
(406) 493-0360
epeterman@rcolegal.com

Skiff R. Larson
*Admitted Pro Hac Vice*
P.O. Box 7478
Williston, ND 58803
(701) 354-2571
skifflarson@gmail.com

Attorneys for Pilot Energy Group, LLC

## LR 7.1(d)(2) CERTIFICATE OF COMPLIANCE

This reply brief complies with the applicable word-count limitation under LR 7.1(d)(2) because it contains 3,229 words, excluding caption and certificates of service and compliance.